*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

VICTOR MANUEL GARAY,

        Defendant-Appellant.

UNPUBLISHED
October 28, 2021

No. 329091
Kalamazoo Circuit Court
LC No. 2014-000785-FJ

ON REMAND

Before: STEPHENS, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

This case returns to us on remand from our Supreme Court for this Court "to determine whether the trial court properly considered the 'factors listed in *Miller v Alabama*, [567 US 460] (2012),' MCL 769.25(6), or otherwise abused its discretion."[1] We again affirm defendant's convictions, reverse the life-without-parole sentences, and remand for resentencing.

## I. BACKGROUND

This case arose from the shooting death of 13-year-old Michael Day on May 26, 2014. Defendant was 15 years old at the time of the shooting. Defendant and Day were members of two rival gangs. Day was a member of the Washington Street Boys, and defendant was affiliated with Trapp Money. *People v Garay*, 320 Mich App 29, 33; 903 NW2d 883 (2017). Defendant was arrested and charged in connection with Day's death. Defendant was convicted by a jury of first-degree murder, MCL 750.316; conspiracy to commit murder, MCL 750.157a; MCL 750.316; and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. In accord with MCL 769.25(3), the prosecution moved the trial court to sentence defendant to life without parole. As is required under MCL 769.25(5), the court held a sentencing

---

[1] *People v Garay*, 506 Mich 936, 936; 949 NW2d 673 (2020).

hearing to "consider the factors listed in *Miller v Alabama*, [567 US 460]; 183 L Ed 2d 407; 132 S Ct 2455 (2012), and . . . any other criteria relevant to its decision[.]"

Two witnesses testified at the sentencing hearing: Larry Howley, a "licensed master's social worker" who had counseled children and adults since 1969, was called by defendant, and Officer Fidel Mireles, a member of the Kalamazoo Department of Public Safety, was called by the prosecution. Howley testified that he counseled defendant for approximately two years beginning in 2011. Defendant had been referred for counseling after he was diagnosed with oppositional defiant disorder (ODD) by Community Mental Health. Howley explained that ODD was a diagnosis used to cover particular attitudes and behaviors, "including angry reactions, striking out, not accepting authority." He classified the disorder as generally associated with youth. He testified that with appropriate counseling and treatment, a person with ODD could "improve significantly" and outgrow the disorder through normal growth procedure. He testified that defendant was receptive to counseling and for a significant period of time, defendant performed better in school, and had less absences and suspensions. He identified the source of defendant's anger as distrust which led to noncompliance with authority and poor school attendance and other negative social behaviors. He found defendant was significantly emotionally impaired and had a diminished understanding of the consequences of his actions and cause and effect. Howley testified that defendant's emotional immaturity left him more susceptible to peer influence and peer pressure. Defendant's parents were separated. He had a relationship with both parents but resided with his mother and three sisters. He was not physically abused but he was largely unsupervised because of his parents' work schedules. Howley testified that defendant "saw many peers as threats and looked for help in the wrong places to be safe." Thus, he looked to the gang for authority and protection.

Howley testified that defendant had begun rehabilitation and thrived in the more structured environment of the juvenile detention facility. Howley visited defendant at the juvenile detention facility, and defendant talked about the levels at the facility through which he had progressed. It appeared to Howley that defendant was trying to be accepted by those in authority and to comply with reasonable requests. Defendant had also expressed to Howley skills that he thought he could learn and use as an adult to make a living. Defendant expressed sorrow after the shooting incident for having disappointed his family.

Mireles testified that he was assigned to the Edison neighborhood where defendant lived from 2011 to 2014. He testified that the predominate territorial-based gangs at the time were Trapp Money and the Washington Street Boys. He testified that when he interacted with or saw defendant, defendant was usually with members of Trapp Money. Mireles identified defendant in multiple photos with members of Trapp Money holding up gang signs. He testified that in 2012, in the blocks of the Edison neighborhood associated with Trapp Money, there were 13 calls for shots fired in 2012; 23 calls for shots fired in 2013; and 55 calls for shots fired in 2014.

The trial court sentenced defendant to life imprisonment without the possibility of parole for the murder and conspiracy convictions and to two years' imprisonment for the felony-firearm convictions.

Defendant appealed as of right. We affirmed defendant's convictions, but reversed the life-without-parole sentences, and remanded for resentencing. *Garay*, 320 Mich App at 33, 50.

We held that the trial court made an error of law when it considered the goals of sentencing (rehabilitation, punishment, deterrence, protection, and retribution) to justify imposition of a life-without-parole sentence for a juvenile, and that it failed to appreciate the rarity with which such sentences were imposed on juvenile offenders.

The prosecution appealed our judgment and on October 21, 2020, our Supreme Court reversed this Court's judgment "to the extent that it would broadly preclude sentencing courts from considering, at all, the traditional objectives of sentencing– punishment, deterrence, protection, retribution, and rehabilitation – when considering whether to sentence persons who were under the age of 18 when they committed their offenses to a term of life without parole." *People v Garay*, 506 Mich 936, 936; 949 NW2d 673 (2020) (Docket No. 155886). Additionally, in light of *People v Skinner*, 502 Mich 89; 917 NW2d 292 (2018), reh den 503 Mich 854 (2018), the Supreme Court vacated the remainder of part IV of this Court's judgment and remanded for this Court "to determine whether the trial court properly considered the 'factors listed in *Miller v Alabama*, [567 US 460] (2012),' MCL 769.25(6), or otherwise abused its discretion." *Id*.

## II.  STANDARD OF REVIEW

We review the trial court's sentencing decisions for an abuse of discretion. *Skinner*, 502 Mich at 131. The court abuses its discretion when its decision falls outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). "The trial court's fact-finding at sentencing is reviewed for clear error. *People v Lampe*, 327 Mich App 104, 125–126; 933 NW2d 314 (2019). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Antwine*, 293 Mich App 192, 194; 809 NW2d 439 (2011) (citation and quotation marks omitted). We review de novo issues of law. *People v Al–Shara*, 311 Mich App 560, 567; 876 NW2d 826 (2015).

## III.  ANALYSIS

The issue remanded to us from the Supreme Court is succinct, the Court vacated the remainder of part IV of this Court's judgment and remanded for this Court "to determine whether the trial court properly considered the 'factors listed in *Miller v Alabama*, [567 US 460] (2012),' MCL 769.25(6), or otherwise abused its discretion." *Garay*, 506 Mich at 936.

To that end we focus on the extent to which the trial court addressed each of the *Miller* factors. Those factors were summarized in *Skinner*, 502 Mich at 114-115, as follows:

> (1) his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional; (3) the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him; (4) whether he might have been charged [with] and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own

attorneys; and (5) the possibility of rehabilitation. [Quotation marks and citation omitted.]

These are factors that "counsel against irrevocably sentencing [juveniles] to a lifetime in prison." *Miller*, 567 US at 480. "Thoughtful application of the concepts described in *Miller* permits a court to distinguish between 'the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.' " *People v Bennett*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 350649) quoting *Miller*, 567 US at 479-480 (quotation marks and citation omitted).

> Three general differences between juveniles under 18 and adults demonstrate that juvenile offenders cannot with reliability be classified among the worst offenders. First, as any parent knows and as the scientific and sociological studies respondent and his amici cite tend to confirm, [a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions. . . . The second area of difference is that juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure. . . . The third broad difference is that the character of a juvenile is not as well formed as that of an adult. The personality traits of juveniles are more transitory, less fixed. [*Roper v Simmons*, 543 US 551, 569–570; 125 S Ct 1183; 161 L Ed 2d 1 (2005) (quotation marks and citations omitted)]

We find that the court failed to address factor two and, misapplied the law as to factors one and three. We find that factor four is not pertinent to this defendant. As to factor five, we invite the trial court to expand on the finding of incorrigibility in light of its findings on remand concerning factors one, two, and three. We remand for resentencing.

Factor two addresses the home and family environment of the youthful offender. The court received information on this factor and neither the prosecution nor the defense asserted that it was not relevant. The information in the record regarding defendant's family was that his parents lived in separate households, that he had relationships with both parents, and resided with siblings and his mother. There was no evidence of physical or psychological abuse. There was information regarding his lack of adult supervision due to his parents' work schedules. The court addressed the defendant's neighborhood, noting that gang violence was prevalent and that the defendant's conduct was not atypical for his peers, i.e., other children in the neighborhood where gang violence was substantial. *Eddings* counseled that "youth is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage." *Eddings v Oklahoma*, 455 US 104, 115; 102 S Ct 869; 71 L Ed 2d 1 (1982). We should also consider that "[t]heir own vulnerability and comparative lack of control over their immediate surroundings mean juveniles have a greater claim than adults to be forgiven for failing to escape negative influences in their whole environment." *Roper*, 543 US at 570.

Howley noted that this defendant, left with minimal adult supervision and diagnosed with ODD and immature for his chronological age, looked to the dominant gang culture for safety. Because the court was presented with substantial information upon which to make a determination on factor two and did not do so, we find that failure was a harmful error warranting reversal.

The court did address factor one, age. However, the context within which it was addressed was erroneous. In addressing age the court stated, "[t]his [was] not a spur-of-the-moment irrational decision on the part of a youthful individual to engage in reckless conduct or, in this particular case, in premeditated conduct." The court noted defendant's statement on the day of the murder, that he was going to "air out" the Washington Street Boys, and said defendant had a "callous disregard . . . for any other human being's life." There was no other discussion of age.

The court's discussion of age focused on evidence of premeditation, an element inherent in every first-degree murder. The *Miller* court instructed courts to consider defendant's age "and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences." *Miller*, 567 US at 477. The court received testimony that this defendant did not appreciate risks in that he was emotionally impaired and more immature than children younger than himself. Howley also diagnosed the defendant with ODD, a disorder that negatively affected defendant's reactions to situations calling for trust in authority figures. Howley testified that in a structured environment he observed the defendant to make progress and believed that he would continue to develop mentally and emotionally. "[J]ust as the chronological age of a minor is itself a relevant mitigating factor of great weight, so must the background and mental and emotional development of a youthful defendant be duly considered in assessing his culpability." *Id*. at 476 (quotation marks and citation omitted). On remand, the court shall directly consider this testimony and make a finding as to whether age was a mitigating factor relative to life time incarceration.

Factor three was also addressed incompletely. That factor asks the adjudicator to consider "the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him". The trial court found that the defendant's behavior was not atypical for his peers and that both he and Day were active in the gang life that permeated the Edison neighborhood. The court additionally found that the defendant not only perpetrated the murder but gave forewarning of his intent to bring harm to the rival gang. Thus, the court found defendant's involvement in the crime was in no way peripheral. However, the court did not address "the way familial and peer pressures may have affected him" beyond the statement that his behavior was not atypical for his peers. We can only assume from the context of the ruling that the "peers" whom the court spoke of were the other children who had been recruited by the gang culture. Given the testimony concerning defendant's immaturity, ODD diagnosis, and lack of supervision, this issue too requires additional consideration.

The fourth factor is the consideration of lesser offenses. The court was to consider whether defendant's youth affected his ability to present a defense. The court did not consider this factor and defense counsel stated the factor was not applicable given that there was no plea deal from the prosecution. We note that defendant lost composure at the time of sentencing and was unable to allocute. The court did not err in declining to address this issue due to the waiver by counsel and the defendant will have the right to allocute at resentencing.

The fifth factor is the possibility of rehabilitation. Because the court did not address factor two and failed to properly address factors one and three, we invite the court to revisit factor five in light of its articulation on factors one, two, and three. The court decided that the possibility of rehabilitation was also not a mitigating factor for defendant. The court considered whether defendant's progress in a structured environment could carry over into a non-structured community. The court had little confidence that it would. In support, the court recited infractions from defendant's school records, submitted into evidence by the prosecution, which began with fighting when defendant was eight years old and escalated to battery when defendant reached his teens. The court concluded that this evidenced defendant's inability to be successful in a non-structured environment.

> Deciding that a juvenile offender forever will be a danger to society would require mak[ing] a judgment that [he] is incorrigible—but incorrigibility is inconsistent with youth. And for the same reason, rehabilitation could not justify that sentence. Life without parole forswears altogether the rehabilitative ideal. It reflects an irrevocable judgment about [an offender's] value and place in society, at odds with a child's capacity for change. [*Miller*, 567 US at 472–73 (quotation marks and citation omitted)].

The court found that seven years of worsening behavior, despite vastly improved behavior within the structure of detention , warranted a finding or incorrigibility. Because the court did not address factor two and failed to properly address factors one and three, we direct the court to revisit this factor as well.

The court found that this juvenile defendant was incorrigible and thus that a lifetime of prison was warranted. The court rejected Howley's testimony that the progress made toward rehabilitation within a structured environment was both significant and indicative of the probability that the youthful offender could eventually return to the community without posing a danger to that community. While the trial court may continue to find that this defendant is incorrigible, we ask that the court revisit the issue of rehabilitative probability in light of its revised analysis of factors one, two, and three.

Because the court erred regarding factors one, two, and three, we affirm defendant's convictions, reverse defendant's life-without-parole sentences and remand for resentencing consistent with this opinion. We retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola

-6-

# Court of Appeals, State of Michigan

# ORDER

People of MI v Victor Manuel Garay

Docket No.    329091

LC No.        2014-000785-FJ

Cynthia Diane Stephens
Presiding Judge

Douglas B. Shapiro

Michael F. Gadola
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for resentencing consistent with the opinion of this Court.  We retain jurisdiction.

Proceedings on remand in this matter shall commence within 63 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded.  As stated in the accompanying opinion, we remand this case to the trial court for resentencing for it to consider the *Miller* factors and place its findings on the record.  The proceedings on remand are limited to these issues.

The parties shall promptly file with this Court a copy of all papers filed on remand.  Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 42 days after completion of the proceedings.

/s/ Cynthia Diane Stephens
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

October 28, 2021
Date

Chief Clerk